## DEVOU v. CITY OF CINCINNATI.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1908.)

### No. 1,778.

EMINENT DOMAIN—PROCEEDINGS TO ASSESS COMPENSATION FOR PROPERTY—EVIDENCE.

On the trial to a jury of a proceeding to condemn improved real estate in a city, testimony as to the cost of the building, or its value aside from the value of the land, by witnesses not qualified to testify as to the value of the land, or the property as a whole, is inadmissible, since the value of the building as a part of the entire property, the market value of which is the question in issue, is necessarily affected by the value of the land and its location, surroundings, and the uses to which it can be put.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Fred W. Keam, for plaintiff in error.

Albert H. Morrill, for defendant in error.

Before LURTON and RICHARDS, Circuit Judges, and KNAPPEN, District Judge.

RICHARDS, Circuit Judge. This was a suit brought by the city of Cincinnati to condemn certain pieces of property for park purposes. Among the defendants was Sarah O. Devou, the owner of parcel No. 22, consisting of a lot 50 feet by 100 feet, at the southeast corner of Mound and Barr streets, on which there is a four-story stone and brick building, containing about 50 rooms, and parcel No. 35, consisting of a lot 25 feet front on the north side of Kenyon avenue (No. 628) by 80 feet in depth, upon which there is a two-story brick and frame dwelling house of eight rooms. The case was submitted to jury, which assessed the compensation to be paid by the city to Mrs. Devou as follows:

Parcel 22. Value of land taken, including buildings and other structures situate thereon, $20,000. Damages to residue, nothing.

Parcel 35. Value of land taken, including buildings and other structures situate thereon, $3,000. Damages to residue, nothing.

The usual formal errors are assigned, namely, that the verdict is contrary to the weight of the evidence and against the law, that it does not give a fair equivalent for the property taken, that the court erred in its charges and in overruling the motion for a new trial, and that the judgment is contrary to law; but none of these are seriously relied upon in argument. The error relied upon is the refusal of the court to admit the testimony of architects, builders, and insurance adjusters, who were unable to qualify as experts upon the value of the real estate involved, and were interrogated upon the value of the buildings exclusive of the land. The court's action, and the nature and effect of the ruling, appear in the testimony of James McLaughlin, Charles Rosenstein, and George B. McMillan. McLaughlin is an architect, who has constructed a number of prominent buildings in Cincinnati. After stating that fact, and that he had examined the property of Mrs. Devou at the corner of Barr and Mound streets, he

was asked to give his opinion of the present value of that property. Before answering this question, he stated touching his qualifications as a witness:

"I do not profess to be an expert on the value of property on Mound street."

And in consequence the court sustained the objection that he was not qualified as an expert on the value of real estate in that locality. He was then asked what the value of the improvements on the lot at the corner of Barr and Mound streets added to the value of the ground. The court ruled that it was not competent to show the value of the building separately from the value of the land:

"The value of the land may be shown, and then, in addition, you may show there is a building on it, and the character of the building and the use to which it can be devoted, as enhancing the value of the land."

After this ruling the witness was allowed to state what, in his opinion, it would cost to put a building on the lot. The next day the court reconsidered its ruling and said:

"Yesterday the court ruled upon the introduction of testimony as to the cost of construction of the building or buildings upon this land. In thinking of it since, I think the court was wrong. The question here is as to the market value of this property, and it is entirely legitimate and proper to show what these buildings are, the condition in which they are, whether they are substantial, of stone, brick, or frame, how situated, to show that they are suitable for many uses that would give them value and make them salable— all those things. But what they cost back in 1867, and what they would cost to-day, does not throw any light upon the market value. Sometimes money is very foolishly expended in the erection of a building, so that it is entering the field of speculation, and it cannot aid, but would confuse, the jury in determining what the fair market value of the property is. Therefore the court will exclude all the answers that were given. All the testimony given on that subject yesterday, will be stricken out, and the jury instructed not to consider it."

The witness was then asked:

"Suppose that the ground at the corner of Mound and Barr streets is of the value of $15,000 without any buildings upon it, what in your opinion would be the value of the ground with buildings upon it in their present condition?"

This question was objected to. It was limited by certain questions of the court to an attempt to secure from the witness an opinion of the value of the buildings alone, although it appeared that the witness was not an expert upon real estate values in that locality, and was then excluded.

Charles Rosenstein was a contractor and builder. He also acted as an adjuster for fire insurance companies. He described the improvements upon the property on the corner of Barr and Mound streets. He had acted as an appraiser for a building association, but had never appraised property nearer than three or four blocks from the property in question. The court having held that he was not qualified to testify as an expert, the same question that was put to McLaughlin, intended to draw out an opinion as to the value of the ground, exclusive of the buildings, was put to this witness, and excluded.

George B. McMillan was a contractor and builder. He examined the property at the corner of Barr and Mound streets, and gave a

detailed description of the improvements. The witness acted as an appraiser for building associations, but it appeared he had never appraised land in that locality. After an examination as to the witness' qualifications as an expert, the court held that he had not qualified, and sustained an objection, both to the question propounded to McLaughlin as to the value of the house and ground together, supposing the ground were worth $15,000, and to a question as to the present value of the improvements.

It will be perceived that the action of the court below can be sustained, both on the ground that it was not proper under the circumstances to ask the witness as to the value of the buildings irrespective of the land, and also on the ground that the witness had not qualified as an expert upon the value of the ground in that locality, and therefore on the value of the buildings excluding the land. This was not a case where there was anything unusual or complex about the method to be used in valuing the property sought to be condemned. The principal piece of property, parcel 22, constituted a lot 50 feet by 100 feet at the corner of Mound and Barr streets, having on it a four-story stone and brick building. The jury was impaneled for the purpose of assessing the value of that property. The four-story stone and brick building had been built about 1867. The locality was then a fashionable one, and no expense was spared in constructing the building. In the course of years the situation changed, the locality deteriorated, and the structure became a tenement house, occupied by negroes. Now, it obviously would not assist the jury, in determining the present market value of that property, to be informed that it had cost a large sum for its construction originally, or that a building such as it, with thick walls and stone facing, containing all the material that went into the original structure, would cost (as a mere structure, and irrespective of the ground on which it was built and the locality in which it stood) a large sum. Such a building might originally have cost $60,000. It might as a structure, still retaining its original strength as a substantial building, be valued, irrespective of the ground, at that figure. But this would not enable the jury to arrive at the actual value of the ground and building to-day. It would require for this purpose the testimony of experts acquainted with the value, both of land and buildings, in that locality to-day.

It seems clear to us that the effort of the defendant below was not to enlighten, but rather to confuse and mislead, the jury from a consideration of the actual value of the land and buildings as they are now into a consideration of their cost, of what they might be valued at as buildings alone, irrespective of the ground. In the cases cited by the plaintiff in error, Foote v. Railroad Co., 11 Ohio Cir. Dec. 685, and Railroad Co. v. Gorsuch, 8 Ohio Cir. Ct. R. (N. S.) 297, it will be observed that the rulings in each case were based upon its own peculiar circumstances.

In the Foote Case there was a well used in connection with the farm of which the strip appropriated by the railroad company formed a part, and on this strip were also certain forest and fruit trees. The plaintiff was allowed to show what the well cost. While the court did not intimate that it would be proper to estimate the value of the

well entirely separate and apart from the value of the land, yet it held that, in getting at the value of the land, it was proper to show the cost of the well as an element of value; and in that connection it was proper to show the nature of the well, its depth, the manner in which it was walled, the supply of water it afforded, and its utility and necessity. The same position was taken with regard to the action of the trial court in excluding testimony as to the value of trees that stood upon the land at the time the railroad company took possession of it. The reviewing court held that it was proper to ascertain what the trees would add to the value of the land for the purposes for which it was used before it was occupied by the railroad company.

In the Gorsuch Case there was a building on the land sought to be appropriated. A witness qualified as to the value of the land, but not as to the buildings, and when asked as to the fair market value of the land exclusive of the buildings he was excluded. The Circuit Court held that this was error. He had the right to speak as to the value of the land, although he had not qualified as an expert on the value of the buildings. In the case at bar the witness excluded did not qualify as to the value of the land. The court said (page 302):

"In the case at bar we are of the opinion that the plaintiff had the right to show the value of the land separate from the building, and the value of the building separate from the land, and in the absence of all other evidence the aggregate of these two valuations should be taken as the value of the parcel." Railroad v. Gorsuch, 8 Ohio Cir. Ct. R. (N. S.).

But, on consideration, it is evident that the value of the land enters into the value of the parcel in a way the value of the building does not. If you are an expert, you may testify as to the value of the land exclusive of the building, but you cannot properly separate the building from the land, and testify as to its value wholly irrespective of the land. The local conditions which fix the value of the land reflect upon the building, so its value, unless it is removable, cannot be ascertained irrespective of the land. There may be cases where it is proper enough to permit testimony as to the value of the building separate from the land, and all the land separate from the building, where from such evidence the jury can reach the fact which it is to ascertain, namely, the market value of the land including the building. But in the present case there was an abundance of testimony as to the market value of each parcel as it stands now, by duly qualified experts. We think, under these circumstances, the court did right in rejecting the testimony of those not qualified to act as experts upon a fact which was not directly before the jury, and could not, under the circumstances, be of any substantial service to it in its deliberations.

Judgment affirmed.